# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# at PIKEVILLE

Civil Action No. 17-13-HRW

SHENA VON PATRICK,                                  PLAINTIFF,

v.              **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed her current application for disability insurance benefits in April 2014, alleging disability beginning on December 16, 2010, due to carpal tunnel syndrome in both hands, depression and other conditions (Tr. 273). [1] This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge John Dowling (hereinafter "ALJ"), wherein Plaintiff, accompanied

---

[1] This is Plaintiff's second application for disability insurance benefits. Plaintiff first applied in June 2011, claiming she became disabled on December 16, 2010 (Tr.) 75). ALJ Maria Hodges (ALJ Hodges) denied that application in a February 2013 decision (Tr. 75-85). The agency's Appeals Council denied Plaintiff's request that it review ALJ Plaintiff did not seek judicial review of ALJ Hodges' decision, but instead submitted a second application, the one pending before this Court.

by counsel, testified. At the hearing, Mitch Veeder, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 16-39). Plaintiff was 54 years old on her date last insured. She has a GED (Tr. 274). Her past relevant work experience consists of work as a retail cashier (Tr. 274).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability through her date last insured, December 31, 2015 (Tr. 18).

The ALJ then determined, at Step 2, that Plaintiff suffers from osteoarthritis, carpal tunnel syndrome and degenerative disc disease of the lumbar spine, which he found to be "severe" within the meaning of the Regulations (Tr. 19-21).

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 21-22).

The ALJ further found that Plaintiff could not return to her past relevant work (Tr. 28) but determined that she has the residual functional capacity ("RFC") to perform light work with certain postural, reaching, manipulative and environmental limitations (Tr. 22).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 25).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner*

v. *Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

## B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly consider her mental conditions; (2) the ALJ did not properly consider her carpal tunnel syndrome and (3) the ALJ did not properly consider Plaintiff's borderline age.

## C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ did not properly consider her mental conditions.

In this case, ALJ Dowling had many medical opinions to consider with regard to Plaintiff's alleged mental impairment. It is clear from the details set forth in the hearing decision, that he reviewed and considered each one, as will this Court, *seriatim*.

"In order to determine whether the ALJ acted properly in disagreeing with a medical source, we must first determine the medical source's classification," *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), as "not all medical sources need be treated equally," *Smith v.*

4

*Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Id.* at 875. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir.2012) (noting that a nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source). But "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such instance is where the "[s]tate agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to opinions that are "more consistent ... with the record as a whole," *id.* § 404.1527(c)(4), and opinions of "a specialist about medical issues related to his or her area of specialty." *Id.* § 404.1527(c)(5).

Plaintiff's treating primary care physician, Ira Potter, M.D. noted that Plaintiff's mental status was normal (Tr. 637) and subsequently opined that she could maintain attention and concentration, remember locations and procedures, as well as maintain social appropriate

5

behavior (Tr. 609). Although Plaintiff told Dr. Potter she was depressed and suffered from anxiety, his findings in this regard are mostly unremarkable and within normal ranges. There is nothing in Dr. Potter's notes that suggest a deficit or limitation in mental functioning.

William Rigby, M.D., a psychologist, examined Plaintiff on June 4, 2014 at the request of the state agency. Dr. Rigby noted her mood appears moderately depressed by direct observation and that she reports a range of depressive and anxiety related symptoms and these appear mild to moderate in degree. Dr. Rigby observed that she was fully alert and oriented, with intact concentration and attention, a moderately depressed mood, and no manifestations of anxiety (Tr. 932). She displayed normal thought processes, speech, and affect (Tr. 932). She had intact short- and long-term memory and was able to add, subtract, and multiply (Tr. 932). Plaintiff was pleasant and cooperative and, while she reported mild-to-moderate symptoms, she appeared free of major mental health problems (Tr. 933). Dr. Rigby rated Plaintiff's global assessment of functioning (GAF) at 75 (Tr. 934), indicating "only transient and expect able reactions to psychological stressors." He opined that Plaintiff had no impairment in understanding, retaining, and following simple instructions; no impairment in sustaining concentration and persistence to complete tasks in a normal time; mild impairment in maintaining social interactions with supervisors, friends, and the public; and mild impairment in the ability to adapt and respond to the pressures of normal day-to-day work activity (Tr. 934). The only abnormal finding he noted was Plaintiff's "moderately depressed mood." (Tr. 932).

The opinions of the reviewing psychologists Drs. Brake and Perritt do not help Plaintiff's cause as their suggestion of dire mental limitations is at odds with the bulk of the record. Examination findings noted no manifestations of anxiety and Plaintiff's social interactions were

consistently pleasant and cooperative. Such inconsistencies were good reasons for the ALJ to discount these opinions. *See* 20 C.F.R. §§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); 404.1527(c)(4) (ALJ considers whether an opinion is consistent with the record as a whole).

As for Plaintiff's suggestion of a violation of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) wherein the Sixth Circuit held that the Commissioner is bound by a prior final determination concerning a claimant's entitlement to benefits absent a change in circumstances, her argument has no merit.

In the prior decision, ALJ Hodges found that one of Plaintiff's "severe" impairments was depression and limited Plaintiff's RFC to simple and detailed instructions, no more than occasional interaction with coworkers and supervisors, and no interaction with the public (Tr. 77, 79). In the present case, ALJ Dowling found at step two that Plaintiff's depression was not "severe" and did not include any mental limitations in Plaintiff's RFC (Tr. 19-21, 22). ALJ Dowling thoroughly explained why his findings differed from ALJ Hodges' findings. ALJ Dowling found that Plaintiff's depression was not "severe" based on the updated psychological findings by consultative examiner Dr. Rigby (Tr. 21). As ALJ Dowling reasonably noted, "[t]his examination, by Dr. Rigby, was mostly unremarkable and therefore supports a departure from the previous [ALJ's] finding that depression was a severe impairment" (Tr. 21). Indeed, Dr. Rigby observed that Plaintiff displayed intact concentration and attention, no manifestations of anxiety, and normal thought processes, speech, and affect (Tr. 932). Further, ALJ Dowling recognized that mental status examinations by Dr. Potter were "largely unremarkable" (Tr. 20). In fact, Dr.

7

Potter's treatment notes consistently documented normal orientation, intact memory, normal attention, normal concentration abilities, intact judgment and insight, normal mood, and appropriate affect (*see* Tr. 638, 655, 665-66, 831, 912-13, 956, 961, 968, 986, 991, 996, 1006). ALJ Dowling reasonably found that such evidence "indicates that [Plaintiff] did not have any limitations in the complexity of the instructions she could understand, retain, and follow," contrary to ALJ Hodges' findings in the prior decision (Tr. 20). These findings showed the requisite change in Plaintiff's medical condition that permitted ALJ Dowling to find that Plaintiff was less limited mentally than ALJ Hodges found.

The Court finds no error in ALJ Dowling's consideration of Plaintiff's mental functioning.

Plaintiff's second claim of error is that the ALJ did not properly consider her carpal tunnel syndrome. Although the ALJ found carpal tunnel to be a "severe" impairment at Step 2, Plaintiff maintains that the ALJ's RFC assessment did not sufficiently address the credible limitations arising from her carpal tunnel syndrome. The Court disagrees. The ALJ sufficiently discussed Plaintiff's alleged carpal tunnel limitations (Tr. 22 ("The claimant reported that her impairments affected her ability to . . . use her hands. . ."), 23 ("She testified that she had numbness in her hands, felt pins and needles. . . .")). The ALJ also noted Dr. Potter's finding that Plaintiff's hands appeared tender and stiff with nodules on them, positive Tinel's sign, and EMG testing showing sensory neuropathy in her wrists (Tr. 23). Dr. Potter opined in 2011 that Plaintiff had no limitations on reaching, handling, and feeling (Tr. 608). In March 2016, Dr. Potter wrote that his opined limitations from 2011 were still applicable (Tr. 1026). State agency physician Dr. Reed opined that Plaintiff's only manipulative limitations were frequent handling,

8

fingering, and overhead reaching (Tr. 124-25).

The ALJ reasonably found that this evidence supported a limitation to only frequently (as opposed to constantly) handling and fingering but concluded that "further manipulative limitations [were] not supported, despite the fact that the current decision finds carpal tunnel syndrome to be a severe impairment whereas the prior [ALJ's] decision did not" (Tr. 23-24). The manipulative limitations in the ALJ's RFC finding were consistent with the objective evidence and the medical opinions.

Notably, ALJ Dowling reduced Plaintiff's exertional level in the RFC, in addition to the already-included limitations on overhead reaching, fingering, and feeling (*see* Tr. 22, 24). Such limitations could reasonably accommodate a claimant's carpal tunnel syndrome.

The Court finds that the ALJ's consideration of Plaintiff's carpal tunnel syndrome is supported by substantial evidence.

Finally, Plaintiff maintains that her borderline age should have prompted the ALJ to find her disabled.

The "younger person" category spans ages 45 to 49, and is followed by the "closely approaching advanced age" category, which spans ages 50 to 54. 20 C.F.R. § 404.1563( c) -(d). In cases involving a claimant's date last insured, the agency focuses on the claimant's age when he or she "last met the insured status requirement before the date of adjudication." SSR 83-10, 1983 WL 31251, at *8.

Subsection (b) of the regulation governing age categories provides that there is to be some flexibility between the age categories in "borderline" situations:

> We will not apply the age categories mechanically in a borderline

> situation. If you are within a few days to a few months of reaching
> an older age category, and using the older age category would
> result in a determination or decision that you are disabled, we will
> consider whether to use the older age category after evaluating the
> overall impact of all the factors of your case.

*Id*

An ALJ need only *consider* whether the higher age category is appropriate; he is not *required* to apply it in every borderline age situation. *Id.*; SSR 83-10, 1983 WL 31251, at *8. The agency's *Hearing, Appeals and Litigation Law Manual* (HALLEX) lists several factors to consider in determining whether a claimant's vocational adversities—such as minimal English literacy, marginal English communication abilities, or a history of work in an unskilled job in one isolated industry or work setting—support using a higher age category. *See* HALLEX II-5-3-2, 2003 WL 25498826. Under the HALLEX, "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days." *Id.*

Here, Plaintiff was 54 years old on her date last insured but she turned 55—and thus advanced to the next age category—just three months later (Tr. 28; *see* Tr. 268). However, the ALJ, noted that Plaintiff had none of the adversities contemplated by HALLEX. He found:

> [Plaintiff] has at least a high school education, could communicate
> in English, did not work in an isolated industry, and did not have
> other adverse circumstances justifying use of a higher age category.
> Therefore, while the undersigned considered use of the older age
> category after evaluating the overall factors in the case, such
> factors do not warrant use of the older age category.

(Tr. 28).

Given the absence of the adversities set forth in HALLEX, the Court finds no error in the ALJ's reasoning.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 15th day of February, 2018.

Signed By:
Henry R. Wilhoit, Jr.
United States District Judge